T.C. Summary Opinion 2001-98

UNITED STATES TAX COURT

DAREL GUY TAKEN, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10728-00S.                    Filed June 26, 2001.

Darel Guy Taken, Jr., pro se.

<u>J. Anthony Hoefer</u>, for respondent.

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463 of the Internal Revenue Code in
effect at the time that the petition was filed.[1]  The decision to
be entered is not reviewable by any other court, and this opinion
should not be cited as authority.

Respondent determined deficiencies in, and additions to,

_____

[1]  Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for 1995,
1996, and 1997, the taxable years in issue.

petitioner's Federal income taxes for the years and in the amounts as follows:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1995 | $7,852 | $1,860.00 | --- | $403.63 |
| 1996 | 15,917 | 2,472.75 | $2,088.10 | 555.80 |
| 1997 | 12,210 | 2,747.25 | 1,587.30 | 657.80 |

The issues for decision are as follows:

(1) Whether petitioner filed a Federal income tax return for any of the years in issue.  We hold that he did not.

(2) Whether petitioner is liable for the deficiencies in income taxes and the additions to tax as determined by respondent in the notices of deficiency.  We hold that he is.

(3) Whether respondent erroneously credited overpayments allegedly claimed by petitioner on returns for prior years against past due child support, liability for which petitioner disputes.  We hold that we lack jurisdiction to decide this matter.

Background[2]

Some of the facts have been stipulated, and they are so found.  Petitioner resided in North Buena Vista, Iowa, at the time that his petition was filed with the Court.

---

[2]  The documentary record that was developed at trial was unsatisfactory.  Accordingly, the Court held the record open for 60 days so that the parties could produce specific documentary evidence.  Respondent produced what was requested; petitioner did not.

A.  Facts Relating to Petitioner's Tax Liabilities for the Years
    in Issue

    During 1995, 1996, and 1997, the taxable years in issue,
petitioner was employed by the Chicago, Central & Pacific
Railroad (the Railroad) and received compensation in the amounts
of $45,282, $63,640, and $61,825, respectively.  The Railroad
withheld Federal income tax from petitioner's compensation in the
amounts of $412 and $4,677 for 1995 and 1996, respectively.  The
Railroad did not withhold any Federal income tax from
petitioner's compensation for 1997.

    During 1995, 1996, and 1997, petitioner received interest
income as follows:

| Payor | 1995 | 1996 | 1997 |
|---|---|---|---|
| Homeland Bank NA | $5 | $13 | -- |
| Firstar Bank of Iowa NA | - | 30 | $14 |
| Iowa Community Credit Union | - | 39 | -- |
| Magna Bank NA | | -- | 13 |
| | 5 | 82 | 27 |

    During 1996, petitioner received gambling winnings paid by
two casinos: (1) Belle of Sioux City, Iowa, in the amount of
$5,000; and (2) Harvey's of Council Bluffs, Iowa, in the amount
of $4,867.  Belle of Sioux City withheld Federal income tax in
the amount of $250 from petitioner's gambling winnings.  Harvey's
of Council Bluffs did not withhold any Federal income tax from
petitioner's gambling winnings.

    During the years in issue, petitioner was unmarried and had
no dependents within the meaning of section 152.

Petitioner did not file a Federal income tax return for any of the years in issue, nor did petitioner pay estimated tax for any of those years.

B. Facts Relating to the Setoff of Alleged Overpayments for Prior Years

Petitioner and his ex-wife separated in 1983 and were divorced in 1985. By virtue of the separation and divorce, petitioner became obligated to pay child support.

1. Petitioner's Testimony

At trial, petitioner testified that from 1983 through early 1988, he paid child support directly to his ex-wife by personal and certified check; that in December 1987, his ex-wife filed a complaint against him with the Iowa State support enforcement office for nonpayment of child support; and that his ex-wife's complaint was completely unfounded. According to petitioner, the support enforcement office would not "recognize the payments" that he had made by check, and that, as a consequence, the enforcement office improperly commenced collection action against him.

The collection action to which petitioner alludes was described by him at trial as follows:

PETITIONER: In December '87, my ex-wife went to the support enforcement office here in Iowa -- I was living in the State of Washington -- and she made the complaint to them that I had never paid her. And there was absolutely no truth to that.

THE COURT: Okay.

PETITIONER: But the support enforcement office is, to this day, using that same complaint, to take my Federal and State income taxes, and always have.

THE COURT: Well, no, wait a minute, Mr. Taken. You're saying the support enforcement office is taking your Federal income tax refunds?

PETITIONER: In letters that I have received from them, they are claiming that they are taking them. But, when I come back and say, What have I paid for the year, there's no record of it. Between '87 and '94, there is no record of them taking any of my wages, which they did do.

They started in '89, they started garnishing my wages. But from '83 until December '87, when she [the ex-wife] filed this complaint, they won't recognize the payments that I've made. And this is why they're taking my income tax returns [sic].

According to petitioner, he claimed overpayments on his tax returns for 1987 through 1994 but never received a refund check.

2. Petitioner's Strategy To Avoid Withholding

In 1995, petitioner began writing "exempt" on Form W-4, Employee's Withholding Allowance Certificate, which he filed with the Railroad. Using this stratagem, petitioner virtually eliminated withholding in 1995, significantly reduced withholding in 1996, and completely eliminated withholding in 1997. At trial, petitioner testified that he adopted this strategy "out of pure frustration" because no one would inform him regarding the

disposition of his alleged refunds for prior years.

### 3. Respondent's Records

Respondent introduced a certification, under seal, attesting to the fact that respondent's master file does not include any record of petitioner's having filed a Federal income tax return for any of the years in issue. Respondent introduced a second certification, under seal, attesting to the lack of record of petitioner having filed a Federal income tax return for any of the years 1988 through 1993.

In contrast, respondent introduced certificates, under seal, reflecting transcripts of account for 1987 and 1994, years for which the transcripts demonstrate that petitioner filed Federal income tax returns. The transcript for 1987 indicates that petitioner claimed an overpayment in the amount of $384.41, which was refunded on May 16, 1988. The transcript for 1994 indicates that on March 6, 1995, petitioner claimed an overpayment in the amount of $2,720, which was offset against an outstanding liability on that same date.

## C. The Notices of Deficiency

In July 2000, respondent issued separate notices of deficiency to petitioner determining deficiencies in and additions to petitioner's income taxes for 1995, 1996, and 1997. For each of those years, respondent determined that petitioner failed to file an income tax return and that petitioner received

gross income in the form of compensation, interest, and (for 1996) gambling winnings.

Discussion

A.  Petitioner's Status as a Nonfiler

Petitioner testified at trial that he filed a Federal income tax return for each of the years in issue.  However, we are unable to accept petitioner's testimony at face value.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Diaz v. Commissioner, 58 T.C. 560, 564 (1972); Kropp v. Commissioner, T.C. Memo. 2000-148.  At trial, petitioner did not offer a retained copy of any such purported return, nor did petitioner ever offer a retained copy to respondent during either the examination or pretrial stage of this case.  Indeed, petitioner offered nothing more than his own testimony in support of his contention that he filed a return for each of the years in issue.

In contrast, respondent introduced certificates, under seal, attesting to the lack of record of petitioner having filed a Federal income tax return for any of the years in issue.  This evidence, coupled with what appears to be a substantial history of nonfiling, as well as what we regard as the infinitesimal possibility that respondent (or the Postal Service) would lose petitioner's return for 3 years in a row, supports our finding of fact, supra, that petitioner did not file a Federal income tax return for any of the years in issue.

B.  Petitioner's Tax Liabilities

Section 1(c) imposes a tax on the taxable income of unmarried individuals.  Section 63(b) defines "taxable income", as applicable to petitioner's situation, as gross income less the standard deduction and one personal exemption.  Section 61(a) defines gross income to mean "all income from whatever source derived", specifically including compensation for services and interest.  Sec. 61(a)(1), (4).  Given the broad phraseology of section 61(a), courts have consistently held that gambling winnings are also includable in gross income.  See, e.g., Lyszkowski v. Commissioner, T.C. Memo. 1995-235, and cases cited therein, affd. without published opinion 79 F.3d 1138 (3rd Cir. 1996).

As detailed above, petitioner's taxable income for the years in issue is as follows:

|  | 1995 | 1996 | 1997 |
|---|---|---|---|
| Compensation | $45,282 | $63,640 | $61,825 |
| Interest income | 5 | 82 | 27 |
| Gambling winnings | --- | 9,867 | --- |
| Gross income | 45,287 | 73,589 | 61,852 |
| Less: | | | |
|   Personal exemption | -2,500 | -2,550 | -2,650 |
|   Standard deduction | -3,900 | -4,000 | -4,150 |
| Taxable income | 38,887 | 67,039 | 55,052 |

Pursuant to section 1(c), petitioner's tax liabilities for the years in issue are as follows:

| 1995 | 1996 | 1997 |
|---|---|---|
| $7,852 | $15,917 | $12,210 |

Because petitioner did not file income tax returns for the years in issue, petitioner's tax liabilities for those years constitute deficiencies in income taxes. See sec. 6211(a).[3]

In view of the foregoing, we hold that petitioner is liable for the deficiencies in income taxes as determined by respondent in the notices of deficiency.

C. <u>Additions to Tax For Failure To File</u>

As applicable to petitioner, section 6012(a)(1)(A)(i) requires that an income tax return be filed by every individual who has gross income equal to, or greater than, the sum of the standard deduction and one personal exemption. For an individual who is a calendar-year taxpayer, the return is due on or before the 15th day of April following the close of the taxable year. See sec. 6072(a).

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return. The addition to tax may be avoided if the failure to file is due to reasonable cause and not willful neglect. "Reasonable cause" contemplates that the taxpayer exercised ordinary business care and prudence and was nonetheless

---

[3] As acknowledged by respondent, petitioner's net tax liabilities for the years in issue are as follows:

|  | 1995 | 1996 | 1997 |
| --- | --- | --- | --- |
| Tax liability | $7,852 | $15,917 | $12,210 |
| Less: Withholding |  |  |  |
| By the Railroad | -412 | -4,677 | --- |
| By Belle/Sioux City | --- | -250 | --- |
| Net tax liability | 7,440 | 10,990 | 12,210 |

unable to file a return within the prescribed time.  United States v. Boyle, 469 U.S. 241, 246 (1985); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a conscious, intentional failure or reckless indifference.  United States v. Boyle, supra at 245.

In the present case, petitioner failed to file income tax returns for the years in issue notwithstanding the fact that his gross income far exceeded the threshold amount that triggered the filing requirement for each year.  Petitioner offered no evidence whatsoever that would support a finding that his failure to file was due to reasonable cause and not willful neglect.

In view of the foregoing, we hold that petitioner is liable for the additions to tax under section 6651(a)(1) as determined by respondent in the notices of deficiency.

D.  Additions to Tax for Failure To Pay (1996 and 1997)

Section 6651(a)(2) imposes an addition to tax for failure to pay the amount shown as tax on a return on or before the date prescribed for payment of such tax.[4]  The addition to tax may be avoided if the failure to pay is due to reasonable cause and not

_____

[4]  Sec. 6651(g)(2) provides that in the case of any return made by the Commissioner under sec. 6020(b), such return shall be treated as the return filed by the taxpayer for purposes of determining the amount of the addition to tax under sec. 6651(a)(2).  Sec. 6651(g)(2) applies in the case of any return the due date for which (determined without regard to extensions) is after July 30, 1996.  See Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 1301(b), 110 Stat. 1475.  Thus, sec. 6651(g)(2) applies only to petitioner's 1996 and 1997 returns.

willful neglect.  "Reasonable cause" contemplates that the taxpayer exercised ordinary business care and prudence in providing for payment of the taxpayer's tax liability and was nonetheless unable to pay the tax or would suffer an undue hardship if the tax were paid within the prescribed time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  "Willful neglect" means a conscious, intentional failure or reckless indifference. United States v. Boyle, supra at 245.

In the present case, petitioner paid only a relatively small portion of his tax liability for 1996 and failed to pay any of his tax liability for 1997.  Petitioner offered no evidence whatsoever that would support a finding that his failure to pay was due to reasonable cause and not willful neglect.

In view of the foregoing, we hold that petitioner is liable for the additions to tax under section 6651(a)(2) as determined by respondent in the notices of deficiency.

E.  Additions to Tax for Failure To Pay Estimated Tax

Section 6654 imposes an addition to tax for failure to pay estimated tax.  As applicable herein, imposition of the addition is mandatory whenever prepayments of tax, either through withholding or the making of estimated quarterly tax payments during the course of the taxable year, do not equal the percentage of total liability required under the statute.  See sec. 6654(a); Niedringhaus v. Commissioner, 99 T.C. 202, 222

(1992); <u>Grosshandler v. Commissioner</u>, 75 T.C. 1, 20-21 (1980). Thus, in the present case, we need not address any issue relating to reasonable cause and lack of willful neglect; extenuating circumstances are simply irrelevant.[5]  See <u>Estate of Ruben v. Commissioner</u>, 33 T.C. 1071, 1072 (1960); see also <u>Grosshandler v. Commissioner</u>, <u>supra</u> at 21.

In the present case, petitioner failed to pay estimated tax for any of the years in issue.  Moreover, only a negligible portion of petitioner's tax liability for 1995 was paid through withholding; only a relatively small portion of petitioner's tax liability for 1996 was paid through withholding; and none of petitioner's tax liability for 1997 was paid through withholding.

In view of the foregoing, we hold that petitioner is liable for the additions to tax under section 6654 as determined by respondent in the notices of deficiency.

F.  <u>Jurisdiction Over the Crediting of Alleged Overpayments</u>

As we understand his argument, petitioner contends that his Federal tax refunds for 1987 through 1994 were intercepted and applied against child support obligations for 1983 through 1988 that he did not owe.[6]  Because, in petitioner's view, his refunds

---

[5]  We should not be understood to imply that petitioner had reasonable cause or that there were any extenuating circumstances relating to petitioner's failure to pay estimated tax.

[6]  Factually, the record does not fully support petitioner's contention.

for 1987 through 1994 were improperly intercepted, those refunds are now available to satisfy his liabilities for the 3 years in issue.

Section 6402(c) provides in part as follows:

> SEC. 6402(c). Offset Of Past-Due Support Against Overpayments.--The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support * * * owed by that person of which the Secretary has been notified by a State * * * . The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support * * * .

To the extent that petitioner may be seeking to invoke the overpayment jurisdiction of this Court, see sec. 6512(b), it is clear that we have no jurisdiction under that section to restrain or review any credit or reduction made by the Secretary under section 6402. See sec. 6512(b)(4); see also sec. 6402(e), which bars any court of the United States, including this Court, from hearing any action that is commenced to restrain or review a reduction authorized by section 6402(c);[7] Columbus v. Commissioner, T.C. Memo. 1998-60, affd. without published opinion 162 F.3d 1172 (10th Cir. 1998).

To the extent that petitioner may be seeking to minimize his liabilities for the years in issue, it is equally clear that we

---

[7] Sec. 6402(e) was redesignated sec. 6402(f) by the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3711(a), 112 Stat. 779. Sec. 6402(e), prior to redesignation, applies to refunds payable under sec. 6402 on or before Dec. 31, 1999. See RRA 1998 sec. 3711(d), 112 Stat. 781.

lack jurisdiction to restrain or review any credit or reduction made by the Secretary under section 6402(c).  See sec. 6402(e).  Further, with exceptions not relevant to the present case, payments are not taken into account in determining (or redetermining) the amount of a deficiency.  See, e.g., <u>Logan v. Commissioner</u>, 86 T.C. 1222, 1227-1230 (1986); <u>Clarke v. Commissioner</u>, T.C. Memo. 1999-199 ("payments made by a taxpayer * * * do not serve to reduce the 'deficiency' within the meaning of section 6211(a).").

Reviewed and adopted as the report of the Small Tax Case Division.

In order to give effect to the foregoing,

<u>Decision will be entered for respondent</u>.